UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| LINDA'S LEATHER, LLC, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | Civil Action No. 5:21–CV–046–CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| VICTOR ZAMBRANO, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| And | ) | |
| | ) | |
| VICTOR ZAMBRANO, | ) | |
| | ) | |
| Third Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LINDA SCOTT, | ) | |
| | ) | |
| Third Party Defendant. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Third Party Defendant Linda Scott's Second Motion to

Dismiss. [R. 22]. Defendant/Third Party Plaintiff Victor Zambrano filed a filed a Response,

[R. 23], and Scott replied. [R. 24]. This matter is now ripe for review. For the following reasons,

the Court grants Scott's Second Motion to Dismiss, [R. 22].

## I.    BACKGROUND

This matter is about who may be impleaded into a lawsuit pursuant to Rule 14(a) of the

Federal Rules of Civil Procedure. At issue are two patented anti-cribbing horse collars.

Defendant/Third Party Plaintiff Victor Zambrano, a naturalized citizen, claims he first conceived

and began developing the anti-cribbing collars in Mexico before immigrating to the United States in 1979. [R. 21, pp. 3, 6]. Zambrano has imported his family-crafted collar to the United States since at least 1990. *Id*. at 6. He sold his first-designed horse collar in the United States in 2013. *Id*. at 7. In 2015, due to unforeseen circumstances, Zambrano needed a new manufacturer to produce his collars. *Id.* He "hired" Third Party Defendant Linda Scott, "due to her expertise in crafting leather goods," to "specifically produce his anti-cribbing collar prototypes." *Id*. at 8. This relationship between Zambrano and Scott was short-lived; approximately a year later, Zambrano had a new manufacturer producing his collars. *Id.* at 11–12.

Scott would go on to patent two anti-cribbing horse collars of her own. *See id.* at 12. Notably, in the patent applications, Scott named herself as the sole inventor of the horse collars. *Id*. at 4. She later assigned the exclusive rights to the '129 and '783 patents to Plaintiff/Counter-Defendant Linda's Leather, LLC, who has since sold the collars to customers. *Id.* at 12.

On February 15, 2021, Linda's Leather brought a patent infringement action against Zambrano ("underlying action"). [R. 1]. Count One and Two of Linda's Leather's Complaint alleges Zambrano infringed its '129 and '783 patents. [R. 1, pp. 13–14]. Count Three alleges Zambrano's infringement was willful. *Id.* at 15.

Zambrano believes he is the sole and true inventor of the collars and claims he was wrongfully omitted by Scott in her patent applications. [R. 21, pp. 5,7]. Scott, however, is not a party to the underlying action as Linda's Leather, being assigned the exclusive rights to the '129 and '783 patents, brought the underlying patent infringement action against Zambrano. Thus, Zambrano now seeks her inclusion to resolve issues surrounding the patents assigned to Linda's Leather and to indemnify Zambrano for the alleged infringement of said patents. *Id*. at 1–2. To accomplish Scott's inclusion, Zambrano filed a Third-Party Complaint attempting to implead

2

Scott as a third party defendant pursuant to Rule 14 of the Federal Rules of Civil Procedure.
[R. 10]. Scott responded with a Motion to Dismiss. [R. 18]. Shortly after, Zambrano filed an
Amended Third-Party Complaint against Scott. [R. 21]. As a result, the Amended Third-Party
Complaint, [R. 21], replaces the original, [R. 10], and is the legal operative complaint. *See Parry
v. Mohawk Motors of Mich., Inc.,* 236 F.3d 299, 306 (6th Cir. 2000). Accordingly, Scott's
Motion to Dismiss, [R. 18], directed towards Zambrano's original Third-Party Complaint,
[R. 10], is moot and, therefore, denied. *Crawford v. Tilley*, 15 F.4th 752, 759*759 (6th Cir. 2021)
("The general rule is that filing an amended complaint moots pending motions to dismiss."). In
light of Zambrano's Amended Third-Party Complaint, [R. 21], Scott filed the instant Second
Motion to Dismiss seeking to dismiss the Amended Third-Party Complaint against Scott for,
among other things, failure to comply with Rule 14(a) of the Federal Rules of Civil Procedure
and failure to state a claim under Rule 12(b)(6).[1]

The Amended Third-Party Complaint alleges five counts. Count One seeks a declaratory
judgment that Zambrano is a non-joined inventor of the '129 and '783 patents. [R. 21, p. 13].
Count Two seeks a declaratory judgment that Zambrano has not infringed the '129 and '783
patents. *Id*. at 14. Count Three seeks a declaratory judgment that the claims of the '129 and '783
patents are either invalid or unenforceable. *Id.* Count Four seeks a declaratory judgment that
Scott was obligated to assign, license, or exclusively license any rights to the '129 and '783
patents to Zambrano. *Id*. at 15. Finally, Count Five argues for indemnification of Zambrano by
Scott via Kentucky's common law. *Id*. at 16.

II.     **STANDARD OF REVIEW**

a.  **Rule 12(b)(6)**

---

[1] The Court will not address Defendant's other arguments because, for the reasons stated in this opinion, Zambrano failed to properly implead under Rule 14 and failed to state a claim under common law indemnity.

A third party plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). To do so, a third party plaintiff must make plausible allegations by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (citations omitted). If a third party defendant attacks the complaint with a 12(b)(6) motion to dismiss, the court must "construe the complaint in the light most favorable to the [third party] plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the pleader." *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 228 (6th Cir. 2005) (citations omitted). However, these principles are inapplicable to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "shown"—"that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

### b. Rule 14(a)

Rule 14(a) allows a defendant/third party plaintiff to implead a third-party defendant "who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). The Rule's purpose is "to permit additional parties whose rights may be affected by the decision in the original action to be joined so as to expedite the final determination of the rights and liabilities of all the interested parties in one suit." *American Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008). Impleader is proper only when the third-party defendant's liability is secondary to, or derivative of, the original defendant's liability on the original plaintiff's underlying claim. *Id.* A third-party complaint "is in the nature of an indemnity or

contribution claim," and is, in essence, an attempt by the original defendant to deflect and

transfer the liability asserted against them by the original plaintiff to someone else. *Id.* As one

court reasoned, "[b]y its own language, Rule 14 requires an indemnity claim in order to bring in

a third-party defendant whereby the defendant is attempting to transfer liability from himself to a

third-party defendant in the event he is found to be liable to the plaintiff." *Wells Fargo Bank v.*

*Gilleland*, 621 F. Supp. 2d 545, 547 (N.D. Ohio 2009). As a result, an impleader claim pursuant

to Rule 14(a) is proper "only where the [nonparty's] liability to the third party plaintiff is

dependent on the outcome of the main claim." *American Zurich*, 512 F.3d at 805; *see also*

*Gookin v. Altus Cap. Partners, Inc.*, No. 05–179–JBC, 2006 WL 7132020, at *3 (E.D. Ky. Mar.

24, 2006) ("The third party defendant's liability must be (1) owed to the impleading party; (2)

based on the underlying claim against the impleading party; and (3) derivative of the impleading

party's liability."); *Watergate Landmark Condo. Unit Owners' Ass'n v. Wiss, Janey, Elstner*

*Assocs., Inc.*, 117 F.R.D. 576, 578 (E.D. Va. 1987).

Contrast secondary or derivative liability with that forbidden by Rule 14(a). "[A] defendant's

claim against a third-party defendant cannot simply be an independent or related claim, but must

be based upon the plaintiff's claim against the defendant." *American Zurich*, 512 F.3d at 805;

*United States v. Olavarrieta*, 812 F.2d 640, 643 (11th Cir. 1987). Rule 14(a) cannot be used to

bring into a controversy matters which merely happen to have some relationship to the original

action. *Watergate Landmark*, 117 F.R.D. at 577. In other words, "Rule 14(a) does not allow a

third-party complaint to be founded on a defendant's independent cause of action against a third-

party defendant, even though arising out of the same occurrence underlying the plaintiff's claim,

because a third-party complaint must be founded on a third party's actual or potential liability to

the defendant for all or part of the plaintiff's claim against the defendant." *American Zurich*, 512

F.3d at 805. A decision whether to permit impleader rests within the sound discretion of the Court. *Ohio Farmers In. Co.* v. *Special Coatings, LLC*, No. 3:07–1224, 2008 WL 5378079, at *13 (M.D. Tenn. Dec. 23, 2008) (citing *Doucette v. Vibe Records, Inc.*, 233 F.R.D. 117, 119–20 (E.D.N.Y. 2005)); *Bank of India v. Trendi Sportswear, Inc.*, 239 F.3d 428, 438 (2d Cir. 2000) ("Whether impleader under Rule 14(a) was properly invoked . . . is a matter to be determined in the discretion of the district court.").

If the impleading party fails to satisfy Rule 14's requirements, the third-party complaint fails to state a claim upon which relief may be granted and therefore must be dismissed under Rule 12(b)(6). *See JTH Tax, Inc. v. Freedom Tax, Inc.*, No. 3:19-CV-085-RGJ, 2019 WL 6972404, at *3 (W.D. Ky. Dec. 19, 2019) (citing *State Auto. Mut. Ins. Co. v. Burrell,* No. 5:17-CV-300-DCR, 2018 WL 2024617, at *4 (E.D. Ky. May 1, 2018)); *see also* Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1460 (3d ed.)("Although Rule 14(a) has never expressly provided for a motion to dismiss third-party claims, the federal courts have entertained both motions to dismiss and to strike and have not drawn distinctions between them").

### III.    ANALYSIS

#### a.  Counts 1-3

The first three counts in Zambrano's Amended Third-Party Complaint are clearly inconsistent with Rule 14(a). For impleader to be appropriate, Scott's liability must be derivative of Zambrano's liability to Linda's Leather in the underlying action. *American Zurich*, 512 F.3d at 805; *Gookin*, 20 WL 7132020, at *3. Count One seeks a declaratory judgment that Zambrano is a non-joined inventor of the '129 and '783 patents. [R. 21, pp. 13–14]. Count Two seeks a declaratory judgment that Zambrano has not infringed the '129 and '783 patents. *Id*. at 14. Count Three seeks a declaratory judgment that the claims of the '129 and '783 patents are either invalid

or unenforceable. *Id*. at 14–15. All three counts fail under Rule 14(a) because they all concern Zambrano's potential liability to Linda's Leather, the owner of the patents, rather than Scott's secondary liability. Each of the first three counts functions as a defense to the underlying infringement action. They help to explain why Zambrano is not liable for patent infringement instead of demonstrating why Scott is derivatively liable to Zambrano should Zambrano be liable to Linda's Leather. There is no attempt to transfer liability. *See American Zurich*, 512 F.3d at 805. Notably, Counts One, Two, and Three of the Amended Third-Party Complaint mirror the first three counterclaims found in Zambrano's answer to the underlying action, further demonstrating the claims are unrelated to Scott's Rule 14(a) liability. [R. 7, pp. 15–17]. Even though all three claims arise out of the same general set of facts as the underlying action, the claims are not secondary or derivative of Zambrano's liability to Linda's Leather.

### b. Count 4

Count Four seeks a "[d]eclaratory judgment that Scott was Obligated to Assign, License or Exclusively License any rights to the '129 and '783 Patents to Zambrano." *Id.* at 15. Scott, in her Second Motion to Dismiss, argues that the Amended Third-Party Complaint fails to "allege facts sufficient to satisfy the requirement that Scott be in some way liable to Zambrano *as derived from his misconduct of infringing on [Linda's Leather's] patents*." [R. 22, pp. 12–13]. The Court agrees with Scott that Count Four is an improper attempt at impleader pursuant to Rule 14(a).

Count Four fails to allege Scott's secondary or derivative liability to Zambrano should Zambrano be found liable to Linda's Leather on the original Complaint. Rule 14 requires that Zambrano's third-party claim be based upon the original plaintiff's claim against the defendant. Fed. R. Civ. P. 14(a). But Zambrano's claim in Count Four rests on Scott's alleged failure to assign or license the rights to both patents to Zambrano. [R. 21, pp. 15–16, ¶¶ 111–117]. It is not

7

based on Zambrano's potential liability to Linda's Leather for infringing on the '129 and '783 patents. The implicit theory underpinning Count Four pertains to ownership. Zambrano argues that "Scott's work on the [patented] collar[s] . . . should be deemed to have been created for Zambrano specifically at his request." [R. 21, p. 15]. And as owner, Zambrano argues he deserves certain patent rights. *Id.* at 15–16. Notwithstanding the merits to this ownership argument, Count Four is an independent claim by Zambrano against a non-party (Scott) that may arise from the same set of facts as the underlying action but fails to link any liability of Scott as "dependent on the outcome of the main [patent infringement] claim." *American Zurich*, 512 F.3d at 805; *see also Gookin*, 2006 WL 7132020, at *3 ("Liability is derivative where it is dependent on the determination of liability in the original action.").

Remember, a third-party complaint is in the nature of an indemnity or contribution claim. *American Zurich*, 512 F.3d at 805. But this is not what Count Four alleges. Zambrano does not allege that Scott is secondarily liable to him to satisfy Linda's Leather's patent infringement claims against him. Rather, Zambrano asserts a separate, independent claim that Scott had an obligation to assign the patents to Zambrano. Zambrano's claim against Scott is certainly related to the underlying patent infringement claims, but Zambrano's claim against Scott, if proven, would not make Scott derivatively liable to Linda's Leather (her own company). Put another way, Count Four does not allege how Scott's conduct would have obligated Scott to Linda's Leather in any way. *See Ohio Farmer's Ins.,* 2008 WL 5378079, at *14; *Doucette*, 233 F.R.D. at 120–22.

### c. Count 5

Count Five seeks "[i]ndeminification of Zambrano by Scott under the Common Law of Kentucky." [R. 7, p. 16]. Zambrano seeks to implead Scott by invoking Kentucky common law.

Zambrano believes he is "entitled" to indemnification by Scott because "Zambrano would have no liability to Linda's Leather but for the wrongful acts of Scott." [R. 21, p. 17, ¶ 125]. Under Kentucky law, the right to indemnity "is available to one exposed to liability because of the wrongful act of another" but who is not equally at fault (or in "pari delicto") with the other wrongdoer. *Degener v. Hall Contracting Corp.*, 27 S.W.3d 775, 780 (Ky. 2000). A right to indemnification arises in two scenarios:

> (1) Where the party claiming indemnity has not been guilty of any fault, except technically, or constructively, as where an innocent master was held to respond for the tort of his servant acting within the scope of his employment;

or

> (2) where both parties have been in fault, but not in the same fault, towards the party injured, and the fault of the party from whom indemnity is claimed was the primary and efficient cause of the injury.

*Id.* (quoting *Louisville Ry. Co. v. Louisville Taxicab & Transfer Co.*, 77 S.W.2d 36, 39 (1934)).

Zambrano fails to state a common law claim for indemnity because he has alleged no facts that he has been "exposed to liability" because of the wrongful act of Scott committed against Linda's Leather. Although Zambrano's Third Party Complaint alleges *Zambrano* was wronged by Scott, nowhere does he allege that *Linda's Leather* was wronged by Scott or that he was "an innocent master . . . held to respond" for the unlawful conduct of Scott as against Linda's Leather. Put another way, Count Five is devoid of any factual allegations that support the contention that Scott was the primary, active tortfeasor that caused harm to Linda's Leather, which is essential to common law indemnification. Zambrano's Amended Third-Party Complaint alleges:

> 14. In both the applications for the '953 Application and the '698 Application, Linda Scott misrepresented herself as the sole inventor to the USPTO.
> 15. Linda Scott knew or should have known that Zambrano was the inventor of the '129 and '783 Patents.

16. Linda Scott owed a duty to Zambrano to name him as an inventor of the '129 and '783 Patents.

17. Linda Scott failed to exercise reasonable care by not naming Zambrano as an inventor.

18. Linda Scott's failure to name Zambrano as an inventor of the '129 and '783 Patents breached her duty to him and exposed him to liability from Linda's Leather and his own customers.

. . . .

121. That Zambrano has been exposed to liability to Linda's Leather and Zambrano's customers because of the intentional, negligent, or grossly negligent wrongful acts of Linda Scott.

. . . .

123. That any injury caused to Linda's Leather was ultimately caused by Scott.

[R. 21, pp. 4–5, 16]. These allegations suggest only that Scott breached a duty *to Zambrano* to name him the inventor or co-inventor when applying for the '129 and '783 patents, and that that wrongful act *against Zambrano* caused the alleged injury to Linda's Leather in the underlying action. The causal chain between Scott's alleged wrongful act and the harm to Linda's Leather is tenuous at best. Scott is the sole member of Linda's Leather and it is difficult to understand how, under the facts as alleged by Zambrano, she could actively cause the patent infringement injury to Linda's Leather. Zambrano has failed to plausibly demonstrate Scott was "in fault . . . towards the party injured [Linda's Leather], and the fault of [Scott] was the primary and efficient cause of injury [to Linda's Leather]." *Degener,* 27 S.W.3d at 780.

Zambrano attempts to cure the deficiency in his common law indemnity claim by alleging, for the first time in his Response, that he entered into a joint venture with Scott to manufacture and sell anti-cribbing horse collars. [R. 23, p. 3]. Without citation to any legal authority, Zambrano claims that "indemnification is entirely appropriate if Zambrano relied upon Scott's participation in the joint venture and her secret actions which undermined his participation in the business." *Id.* at 4. He argues Scott's actions and omissions in pursuit of the joint venture "induced Zambrano's actions by misleading him and inducing the alleged

10

infringement." *Id.* Scott, conversely argues that Zambrano has not alleged plausible facts to support his joint venture claim. [R. 24, pp. 4–5].

First, Zambrano never claimed a joint venture with Scott in his Amended Third-Party Complaint and courts "do . . . not consider facts . . . included in a response to a motion to dismiss that are not in the pleadings." *White v. Coventry Health & Life Ins. Co.*, No. 3:14–CV–00645–CRS, 2015 WL 6680908, at *2 (W.D. Ky. Nov. 2, 2015). Thus, the Court denies Zambrano's attempt, in his Response to the Motion to Dismiss, [R. 23], to implead Scott via his common law indemnity claim based on a newly-alleged joint venture theory. Further, Zambrano's Amended Third-Party Complaint fails to plausibly allege facts consistent with a joint venture. Under Kentucky law, the elements to a joint enterprise are: "(1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *Roethke v. Sanger*, 68 S.W.3d 352, 364 (Ky. 2001) (internal citations omitted). As to element three, "it is necessary to the relationship that there be a sharing of the profits and losses; though in the absences of an express agreement, the sharing of losses may sometimes be implied from an express agreement to share profits." *Id.*

Here, Zambrano has not plausibly alleged he shared profits and losses with Scott. The Amended Third-Party Complaint claims Zambrano hired Scott to manufacture the horse collars. [R. 21, p. 8, ¶ 48]. Zambrano allegedly agreed to pay Scott a set price per collar while retaining the freedom to sell to customers at the highest price determined by the market. *Id.* at 8, ¶ 51. Implicit within this arrangement is Zambrano's right, outside of the set cost for Scott's manufacturing, to enjoy all of his profits or suffer all of the losses. Thus, Scott's relationship

11

with Zambrano resembles that of an independent contractor rather than an informal partnership. The Kentucky Supreme Court has defined an independent contractor as "any person who, in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect to all its details." *Harmount & Woolf Tie Co. v. Baker*, 251 Ky. 795, 66 S.W.2d 45, 47 (1933) (citation omitted). As currently pled, Zambrano sought Scott's independent business due to her expertise in crafting leather goods. [R. 21, p. 8, ¶ 48]. There is nothing to suggest Scott shared an equal voice on the design of the horse collars. In fact, when Scott expressed disagreement with collars, Zambrano sought another manufacturer to complete his specific requests. *Id*. at 12, ¶ 81; *see also id.* at ¶ 113 ("Scott manufactured the prototype collar . . . based on the designs and under the instruction of Zambrano.").

Finally, for the same reasons outlined above, Zambrano's claims of a joint venture in his Response, even if accepted as true, fail to save his common law indemnity claim. That is, even accepting his allegation of a joint venture, Zambrano has failed to plausibly demonstrate he has been "exposed to liability" because of the wrongful act of Scott committed against Linda's Leather, as required under Kentucky law. *Degener,* 27 S.W.3d at 780.

The Court understands Zambrano's arguments related to judicial economy, [R. 23, p. 6], but Rule 14(a) is not the proper tool for bringing her into this lawsuit. No view is expressed here on the merits of any potential claims by Zambrano might have against Scott.

## IV.  CONCLUSION

Zambrano's Amended Third-Party Complaint against Scott fails to comply with Rule 14(a), the procedural mechanism for impleader, and further fails to state a common law indemnity

claim.[2] Thus, pursuant to its sound discretion, the Court denies Zambrano's attempt at impleader, [R. 21], and grants Scott's Second Motion to Dismiss, [R. 22].

Accordingly, it is **HEREBY ORDERED** as follows:

1. Third Party Defendant's Motion to Dismiss **[R. 18]** is **DENIED as moot**.

2. Third Party Defendant's Second Motion To Dismiss, **[R. 22]**, is **GRANTED.**

3. Defendant/Third Party Plaintiff's Amended Third Party Complaint, **[R. 21]**, is **DISMISSED** without prejudice and **STRICKEN** from the Court's docket.

This the 10th day of January, 2022.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

---

[2] The Court's holding is limited to Rule 14(a), the only rule invoked by Zambrano.