UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

LINDA'S LEATHER, LLC,

Plaintiff,

v.

VICTOR ZAMBRANO, *et al.*,

Defendants.

Civil Action No. 5:21-CV-00046-CHB-MAS

**MEMORANDUM OPINION AND ORDER**

*** *** *** ***

This matter is before the Court on Plaintiff Linda's Leather, LLC's Motion for Attorney Fees Under 35 U.S.C. § 285. [R. 173]. Defendant Victor Zambrano responded in opposition, [R. 176 (sealed)], and Plaintiff replied, [R. 177]. Thereafter, and pursuant to the Magistrate Judge's order, [R. 186], Plaintiff filed its Motion for Leave to Supplement Motion for Attorney Fees under 35 U.S.C. § 285 (DN 173), [R. 189], Defendant responded, [R. 191], and Plaintiff replied, [R. 192]. For the following reasons, the Court will grant Plaintiff's motions to supplement and for attorney fees and order Defendant pay Plaintiff a partial fee award of $68,700.

## I. BACKGROUND

This case centers on the development of anti-cribbing[1] collars and Plaintiff's patents concerning these collars. [R. 1]. On February 15, 2021, Plaintiff filed this case against Defendant alleging patent infringement of both of Plaintiff's patents. *Id.* Since that date, this case has been hotly litigated by both parties. On January 27, 2026, the Court ruled that "the Zambrano Collar

[1] Cribbing is a "compulsive behavior in some horses" that involves a horse "grasping at objects . . . with its incisor teeth and then arching its neck (not downward) and contracting the lower neck muscle to retract the larynx." [R. 94-2, p. 2].

literally infringes both" of Plaintiff's patents and that none of Defendant's affirmative defenses preclude liability. [R. 119, pp. 15–29]. The case thereafter proceeded towards trial on the remaining issues of Rule 37 attorney fees, permanent injunction, damages, willfulness, enhanced damages, pre- and post-judgment interest, and whether this was an exceptional case warranting attorney fees under § 285. *See* [R. 120 (joint status report)]; [R. 135 (Pretrial Order)]. On June 1, 2026, the Court held a pretrial conference with the parties, [R. 168], and the parties immediately thereafter conducted a settlement conference for the remainder of the day, [R. 167]. The parties reached a settlement agreement on all matters of this case except "whether this is an exceptional case mandating the award of attorneys' fees to the prevailing party per 35 U.S.C. § 285." *Id.*; *see also* [R. 176-1 (sealed Settlement Agreement)].

On June 22, 2026, Plaintiff filed the present motion for attorney fees under § 285. [R. 173]. Defendant responded in opposition, [R. 176], and Plaintiff replied, [R. 177]. Thereafter, and pursuant to the Magistrate Judge's order following a status conference, [R. 186], Plaintiff filed a motion to supplement, [R. 189], Defendant responded, [R. 191], and Plaintiff replied, [R.192]. The matter stands submitted for review.

## II. LEGAL STANDARD

Under the Patent Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). District courts "determine whether a case is exceptional in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* (citation omitted). Those

circumstances may include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6; *see also Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*, 858 F.3d 1383, 1387 (Fed. Cir. 2017). "[T]here is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised." *Octane Fitness*, 572 U.S. at 554 (citation and quotation marks omitted). In determining if a case is exceptional under the totality of the circumstances, a "district court has discretion, in an appropriate case, to find a case exceptional based on a single, isolated act." *Intell. Ventures I LLC v. Trend Micro Inc.*, 944 F.3d 1380, 1384 (Fed. Cir. 2019). "An exceptional case determination must find support in a 'preponderance of the evidence.'" *Rothschild Connected*, 858 F.3d at 1387 (quoting *Octane Fitness*, 572 U.S. at 557–58).

## III. ANALYSIS

Plaintiff argues that this is an exceptional case under § 285 and that the Court should grant a full fee award. [R. 173-1]; *see also* [R. 177]; [R. 189]; [R. 192]. In his response, Defendant argues that Plaintiff fails to demonstrate how this is an exceptional case and that the facts show that Plaintiff seeks to recast ordinary litigation events as unreasonable conduct. [R. 176]; *see also* [R. 191]. As explained below, the Court finds that this is an exceptional case under § 285 and will grant Plaintiff a fee award of $68,700.

### A. Plaintiff's Motion for Leave to Supplement, [R. 189]

As a preliminary matter, the Court will address and grant Plaintiff's Motion for Leave to Supplement Motion for Attorney Fees under 35 U.S.C. § 285 (DN 173). [R. 189]. In this motion, Plaintiff raises to the Court's attention further evidence of Defendant's continued infringing sales of the Zambrano Collars and additional litigation conduct that occurred after the briefing for the

underlying motion for attorney fees had completed. *See id.* at 5–7. Plaintiff argues that this additional evidence could not have been previously brought in earlier briefing, that it is material, and that Defendant will suffer no prejudice by the supplementation. *Id.* at 5–8. Defendant filed a response in opposition arguing that Plaintiff's supplemental evidence is cumulative, insignificant, and seeks to wrongfully expand the current dispute. *See* [R. 191, pp. 4–9]. The Court disagrees. The contents of Plaintiff's motion are clearly relevant to the Court's determination of whether this is an exceptional case under § 285, and the facts alleged in Plaintiff's motion to supplement all occurred after the briefing for the underlying motion had completed. Accordingly, the Court will grant Plaintiff's motion to supplement.

### B. Plaintiff's Motion for Attorney Fees Under 35 U.S.C. § 285, [R. 173]

#### 1. Plaintiff as the Prevailing Party

Section 285 permits attorney fees be awarded only to the "prevailing party." To be the "prevailing party . . . the party [must] have received at least some relief on the merits. That relief must materially alter the legal relationship between the parties by modifying one party's behavior in a way that 'directly benefits' the opposing party." *Shum v. Intel Corp.*, 629 F.3d 1360, 1367 (Fed. Cir. 2010); *see also CRST Van Expedited, Inc., v. EEOC*, 578 U.S. 419, 422 (2016) ("[T]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties." (citation and quotation marks omitted)).

There is no real question that Plaintiff is the prevailing party in this action. *See* [R. 176, p. 3 (Defendant arguing that "[a] prevailing party is not entitled to fees simply because it prevailed")]. The Court granted Plaintiff's motion for summary judgment as to Defendant's infringement of both patents, [R. 119], and Defendant later stipulated that his infringement was willful, [R. 167]; *see also* [R. 176-1, p. 2 (sealed Settlement Agreement)]. Moreover, Defendant

does not dispute that Plaintiff is the prevailing party. Accordingly, Plaintiff is the prevailing party for purposes of § 285.

**2. Exceptional Case**

This case was filed over five years ago and has been hotly litigated in this Court since that date. Throughout this time, the Court has become well acquainted with the parties and their counsel, and this experience informs the Court's ultimate decision on the resolution of this motion for attorney fees. The Court will begin with the most "exceptional" conduct in this case.

On January 27, 2026, the Court ruled that "the Zambrano Collar literally infringes both" of Plaintiff's patents and that none of Defendant's affirmative defenses preclude liability. [R. 119, pp. 15–29]. Two months later, on March 27, 2026, an individual operating at the behest of Plaintiff coordinated a purchase of one of Defendant's infringing collars. [R. 173-2]; [R. 173-3]. Defendant, who was unaware that this transaction was coordinated by Plaintiff, sold that individual one of the infringing collars for $150 and included a handwritten receipt attesting to that fact. [R. 173-2]; [R. 173-3]. Four months later, and one month after the parties had reached a settlement agreement as to most of the remaining issues in this case, *see* [R. 176-1], on July 20, 2026, Plaintiff again coordinated a purchase of two more infringing collars from Defendant using a different buyer. [R. 189-1]; [R. 189-3]. Defendant did not issue a handwritten receipt for this transaction, but instead Plaintiff includes photographs of the transaction as it occurred on that date. *See* [R. 189-3].

Defendant does not dispute that either the March or July arranged sales occurred or that these collars were the same Zambrano Collars that the Court found to infringe both of Plaintiff's patents in its summary judgment ruling. *See generally* [R. 176]; [R. 191]. Instead, "Defendant now

concedes that, after settlement, he sold two of the four remaining collars." [R. 191, p. 2].[2] Based on this concession, and the record evidence, *see* [R. 189-1, p. 3]; [R. 189-2, pp. 2–8]; [R. 189-3, pp. 3–8]; [R. 189-4, pp. 2–7], it appears clear to the Court that Defendant has repeatedly sold infringing collars even after the Court's determination that those collars infringed Plaintiff's patents.

Defendant argues that the July sale was a "limited mistake in judgment arising from his belief that he could dispose of the remaining inventory because the settlement agreement did not address the disposition of the last few collars and no final injunction had yet been entered." [R. 191, p. 2]. Defendant's argument is unavailing. Whether or not the settlement agreement addressed residual inventory or the fact that an injunction had not yet been entered does not excuse Defendant's conduct. Moreover, Defendant provides no explanation or justification for the March sale. *See generally* [R. 176]; [R. 191]. The Court explicitly ruled that the Zambrano Collar infringed both of Plaintiff's patents, and Defendant thereafter willingly and repeatedly chose to sell those infringing collars with that knowledge and understanding.

The Court finds Defendant's choice to sell what he knew to be infringing collars on multiple occasions, after the Court's infringement ruling, was utterly unreasonable and a clear demonstration of Defendant's callousness to Plaintiff's legal rights and this Court's ruling. This fact alone largely warrants finding that this is an exceptional case under § 285. *See Johnson & Johnston Assocs., Inc. v. R.E. Serv. Co.*, No. C 97-04382 CRB, 1998 WL 908925, at *3 (N.D. Cal. Dec. 23, 1998) (Breyer, J.) ("[D]efendants' continued infringement of the patent despite jury and court findings of infringement sets this case apart from the run of the mill patent infringement

[2] Defendant does not explicitly acknowledge or concede that he sold an infringing collar in the alleged March transaction. *See generally* [R. 176]; [R. 191]. However, as stated above, Defendant does not dispute that it happened or otherwise argue that the sale did not infringe Plaintiff's patents. *See generally* [R. 176]; [R. 191].

actions, making this an exceptional case."), *rev'd on other grounds*, 285 F.3d 1046 (Fed. Cir. 2002); *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, No. 4:14-CV-371, 2017 WL 4038883, at *3 (E.D. Tex. Sept. 13, 2017) ("Defendants have continued to infringe the '884 and '029 Patents—after the jury found infringement, after the Court entered judgment, after the Court enhanced damages. The Court considers Defendants' continued infringement to be unreasonable, deliberate and willful in nature, especially in light of the Court's orders and the jury's verdict."), *rev'd on other grounds*, 749 F. App'x 989 (Fed. Cir. 2019); *Pentech Int'l, Inc. v. Hayduchok*, 931 F. Supp. 1167, 1179 (S.D.N.Y. 1996) ("Due to Pentech's willful infringement, and especially in light of Pentech's disregard for Judge Leval's finding of infringement, this case meets the test as exceptional.").

Moreover, Defendant's willfulness, as evidenced by the clear record and Defendant's stipulation, also supports the Court's conclusion that this is an exceptional case. *See* [R. 176-1 ("Defendant agrees to pay Plaintiff and Plaintiff's counsel [redacted amount] . . . as a stipulation as to willfulness for the patent infringement.")]; *see also SiOnyx LLC v. Hamamatsu Photonics K.K.*, 981 F.3d 1339, 1355 (Fed. Cir. 2020) ("[W]illfulness is 'among the reasons that a court may find a case to be exceptional.'" (quoting *Therasense, Inc. v. Becton, Dickinson & Co.*, 745 F.3d 513, 516 (Fed. Cir. 2014))); *Johnson & Johnston*, 1998 WL 908925, at *3 ("[T]he overwhelming evidence of willfulness alone justifies the finding that this is an exceptional case."); *Polara Eng'g, Inc. v. Campbell Co.*, 237 F. Supp. 3d 956, 978 (C.D. Cal. 2017) (noting that the defendant's choice "to continue sales of its two-wire device after Judge Carney's ruling . . . . was among the 'totality of the circumstances' that was appropriately considered by the jury to assess the egregiousness of [the defendant's] conduct" and collecting cases), *aff'd in part, vacated in part, remanded sub nom.*,

894 F.3d 1339 (Fed. Cir. 2018). Accordingly, Defendant's willfulness further informs the Court that this is an exceptional case under § 285.

As noted previously, a case may be exceptional because of "the unreasonable manner in which the case was litigated," or due to "the substantive strength of a party's litigating position." *Octane Fitness*, 572 U.S. at 554. Here, the Court also finds that Defendant's relatively weak position at the summary judgment stage based on the developed record also makes this an exceptional case. That said, the Court will note that Defendant's initial defense of the case was not unreasonable since he had been selling horse collars for decades and initially took an early version of his own collar to Plaintiff to manufacture for him. Still, Defendant's initial position quickly devolved based upon the developed record and Defendant's continued infringing sales. Given Defendant's weak position by the summary judgment stage based on the developed record, the Court finds that, on balance, the strength of Plaintiff's position also demonstrates that this is an exceptional case. *See Tools Aviation, LLC v. Digital Pavilion Elecs. LLC*, 797 F. Supp. 3d 222, 231 (E.D.N.Y. 2025) (finding that a case was exceptional in part because of the defendant's weak position at the summary judgment stage); *Singh Mgmt. Co., LLC v. Singh Michigan Homes LLC*, No. 2:21-CV-12188-TGB-EAS, 2025 WL 2700607, at *12 (E.D. Mich. Sept. 22, 2025) (same). This conclusion is further supported by Defendant's choice to continue to sell his collars after the Court ruled on the Motion for Summary Judgment and found those collars to be infringing, while the issue of willfulness was still undetermined. Simply put, the strength of Plaintiff's case (as to willfulness) and the reasonableness of Defendant's continued litigation were fundamentally altered by these blatantly infringing sales. *See also Wi-LAN, Inc. v. Sharp Elecs. Corp.*, C.A. No. 15-379-LPS, C.A. No. 15-788-LPS, 2022 WL 611236, at *2 (D. Del. Feb. 3, 2022) (finding that a patentee's "decision to continue litigating . . . after failing to obtain admissible evidence [without

which it could not prevail] renders this case exceptional"). This, too, supports the Court's finding that this is an exceptional case.

The Court next considers the additional instances of allegedly unreasonable conducted cited by the plaintiff. As noted, this case was brought over five years ago. Since then, it has been aggressively litigated by both parties. While Plaintiff argues broadly that Defendant's litigation conduct throughout this case has been unreasonable "at every stage," Plaintiff cites to specific instances of conduct for the Court's consideration. [R. 173-1, pp. 5–6]; [R. 189, p. 6]. Specifically, Plaintiff references the following three instances: (1) a "duplicative state-court action" in the Woodford Circuit Court, [R. 173-1, p. 5]; (2) a lengthy dispute over a set of requests for admissions ("RFA"), *id.* at 5–6; and (3) Defendant's post-briefing conduct after his July 2026 sale of two infringing collars, [R. 189, p. 6]. The Court has reviewed the record and the parties' briefing on these instances and, on balance, finds that while each of the three instances involve some degree of unreasonable litigation conduct, Defendant's litigation conduct concerning the RFA dispute is the most concerning.

Defendant repeatedly argues that Plaintiff's reference to the RFA dispute is an attempt "to resurrect waived issues." *See* [R. 176, pp. 2, 8–11]. Specifically, Defendant argues that, as part of the settlement agreement, Plaintiff agreed to withdraw all pending motions, which included a pending motion for attorney fees concerning the RFA dispute. *See id.* at 8–10. As Defendant argues, Plaintiff's withdrew that motion, and in doing so, waived the right to reassert those same underlying facts in this motion. *See id.* This argument is unavailing. First, while the parties did agree to withdraw all pending motions, the parties noted that "[t]he only remaining issue before the Court is whether this is an exceptional case mandating the award of attorneys' fees to the prevailing party per 35 U.S.C. § 285." [R. 167 (order following settlement conference)]; *see also*

[R. 176-1 (sealed Settlement Agreement)]. A consideration of attorney fees under § 285 looks at the unreasonable litigation conduct for the entire case. *See Octane Fitness*, 572 U.S. at 554. Because of this, it was unreasonable for Defendant to believe that Plaintiff would not reassert these same facts in context of the present motion to argue that this is an exceptional case under § 285. *See also* [R. 170 (Plaintiff's Notice of Withdrawal of Renewed Motion for Attorney Fee noting that "Plaintiff does not waive the right . . . to refer to, cite, rely upon, or otherwise incorporate the conduct, factual record, exhibits, and related procedural history that were the subject of [R. 121]" in the later-filed § 285 motion)].

Turning back to the RFA dispute, the Court notes that Defendant has already twice been sanctioned for litigation related to this case. *See* [R. 92]; *Zambrano v. Scott*, No. 5:24-CV-00336-KKC, at [R. 12] (E.D. Ky. July 2, 2025). Defendant's demonstrated pattern of sanctionable litigation conduct informs the Court's evaluation of the RFA dispute here. *See SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1352 (Fed. Cir. 2015) (noting that courts should consider a party's "pattern of litigation where adequate evidence of an abusive pattern is presented"). Notably, based on the Court's familiarity with the parties, counsel, and the record, Defendant unreasonably amended his RFA responses multiple times, even after the Magistrate Judge had ruled on the matter. *See* [R. 91]; [R. 173-1, pp. 5–6]. Defendant's conduct appears to have been driven by an obstructive intent rather than by any appropriate litigation strategy. The Court finds Defendant's litigation conduct during the RFA dispute to be largely unreasonable and part of a broader pattern of litigating this case in a vexatious manner.

That said, Plaintiff is not totally innocent of unreasonable litigation conduct. The Court notes that, based on its experience with this case, gamesmanship has been demonstrated by both sides during the course of this litigation, albeit to different levels of severity. While Plaintiff has

not been sanctioned in this case, not all of Plaintiff's litigation conduct has been strictly reasonable or warranted. This has included gamesmanship in representations to the Court, *see* [R. 142], and Plaintiff's attempt to introduce plainly inadmissible evidence at trial, *see* [R. 160, pp. 5–9]. Largely because of the fact that Plaintiff's own litigation conduct has included isolated instances of unreasonableness, and because Defendant's initial defense of the case was reasonable, the Court will not grant a full award. Nonetheless, on balance, Defendant's demonstrated unreasonable litigation conduct throughout the entirety of this case further demonstrates that this is an exceptional case.

As a final note, the Court finds Defendant's argument that no award is warranted in this case because of Plaintiff's attempt to turn a "low-value case into a fee case" to be unavailing. *See, e.g.*, [R. 176, pp. 1, 4–5]. It is certainly true that a case does not become exceptional under § 285 just because the "litigation costs exceed the potential damages." *AEN Int'l Co. v. Uniclass Tech. Co.*, 932 F.3d 1371, 1373 (Fed. Cir. 2019). However, the Federal Circuit has emphasized that there is no "*de minimis* exception for infringement" because "[i]t cannot be the case that a plaintiff may be subjected to monetary sanctions for failing to drop a case against a defendant if the cost of litigation exceeds the potential recovery." *Id.* (citation and quotation marks omitted). This concern noted by the Federal Circuit is especially pertinent here where much of Plaintiff's recent litigation activity has been spurred on by Defendant's own choice to continue infringing Plaintiff's patents. Accordingly, and for all of the reasons stated above, the Court finds that this is an exceptional case under § 285.

### 3. Reasonable Fee Award

"The determination of reasonable attorney fees is also a matter that is committed to the sound discretion of a district court judge." *In re Rembrandt Techs. LP Pat. Litig.*, 899 F.3d 1254,

1278 (Fed. Cir. 2018) (citation and quotation marks omitted). "[A]ttorney fees under § 285 are compensatory, not punitive." *Id.* The Federal Circuit has held that there must be a "causal connection between the claimed misconduct and the fees awarded." *Id.* at 1277. "[A]n award of all of a party's fees, 'from either the start or some midpoint of a suit,' may be justified in some 'exceptional cases.'" *In re Rembrandt*, 899 F.3d at 1279 (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 110 (2017)). "[D]istrict courts commonly apportion fee awards so as to only include fees incurred after the misconduct began." *Sherwin-Williams Co. v. PPG Indus., Inc.*, No. 2:17-CV-01023-JFC, 2025 WL 4070432, at *4 (W.D. Pa. Aug. 29, 2025). The Federal Circuit has noted that "the amount of the award must bear some relation to the extent of the misconduct. The district court must explain that relationship, at least to the extent practicable." *In re Rembrandt*, 899 F.3d at 1279 (internal citation omitted). However, "because it is the 'totality of the circumstances,' and not just discrete acts of litigation conduct, that justify the court's award of fees," courts are not required to engage in a granular analysis of identifying which fees were incurred because of specific acts of bad-faith conduct. *Homeland Housewares, LLC v. Sorensen Rsch.*, 581 F. App'x 877, 881 (Fed. Cir. 2014).

As an initial matter, the Court has reviewed Plaintiff counsel's declarations and fee calculations and finds them to be reasonably proportionate to the given dispute. *See* [R. 189-5]. Moreover, other than alleging that Plaintiff has a "fee-driven litigation motive," *see* [R. 176, p. 1], Defendant does not make any specific argument on how those fees were unreasonably calculated or billed. *See generally* [R. 176]; [R. 191]. The Court finds these fee amounts in terms of both accumulated hours and hourly fees to be reasonable in light of the given disputes and will utilize

these largely uncontested numbers as the basis for the Court's ultimate fee determination. *See* [R. 189-5].[3]

Turning to the actual fee award, the Court finds that the unreasonableness of Defendant's choice to continue infringing Plaintiff's patents and the litigation that followed warrants a fee award of most all litigation expenses[4] incurred after the date of Defendant's first post-infringement ruling sale: March 27, 2026. The Court will not grant a full award for this category of fees because of Plaintiff's isolated instances of unreasonable litigation conduct that occurred during this post-March 27, 2026, period. Accordingly, the Court will grant Plaintiff an initial award of 90% of all fees incurred after this date, totaling $35,190: comprised of 90% of a portion of Phase VII after March 27, 2026 ($1,080), [R. 189-5, pp. 30–31]; 90% of all of Phase VIII ($13,320), *id.* at 31–34; 90% of all of Phase IX ($8,640), *id.* at 34–35; and 90% of all of Phase X ($12,150), *id.* at 36–38. *See also id.* at 38–39 (summary table). Moreover, and because of Defendant's demonstrated willfulness and his pattern of unreasonable litigation tactics throughout this case, the Court finds that a partial fee award is warranted for the fees incurred on or before March 27, 2026. Given the conduct by both parties in this case and based on the Court's lengthy experience with the litigation and counsel in this matter, on balance, the Court will grant Plaintiff a partial award of 40% of all fees incurred on or before March 27, 2026, equaling $33,510, in addition to the award of $35,190

---

[3] Plaintiff's counsel filed a more recent declaration including an additional $3,200 in billed attorney fees that were incurred through the preparation and filing of Plaintiff's reply. *See* [R. 192-1, pp. 6–7]. While the Court previously denied Defendant's request to strike Plaintiff's reply, *see* [R. 194], the Court does not believe that it can or should consider the evidentiary submission of this additional amount for attorney fees without Defendant having a chance to respond to that submission. *See Seay v. Tennessee Valley Auth.*, 339 F.3d 454, 481–82 (6th Cir. 2003). Further, as the Court noted in its previous order, it is unclear whether the Magistrate Judge's order even permitted a reply. *See* [R. 194]. Given these considerations, the Court will not award attorney fees incurred through the filing of this reply. *See* [R. 192-1, pp. 6–7]. Accordingly, the Court will not consider this additional $3,200 in its fee award determination.

[4] Excluding the additional $3,200 as discussed *supra* note 3.

for fees after that date. *See* [R. 189-5].[5] The Court comes to this percentage based on its belief that not all of Defendant's litigation conduct in this case has been *unreasonable* and that not all of Plaintiff's litigation conduct has been *reasonable*. The Federal Circuit has noted that "a case should be viewed more as an 'inclusive whole' rather than as a piecemeal process when analyzing fee-shifting under § 285." *Therasense*, 745 F.3d at 516; *see also Comm'r, INS v. Jean*, 496 U.S. 154, 161–62 (1990) ("Any given civil action can have numerous phases. While the parties' postures on individual matters may be more or less justified, the [Equal Access to Justice Act]—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items."). Instead of meticulously parsing through which litigation conduct was and was not reasonable, the Court utilizes this percentage as its fair apportionment of the pre-March, 27, 2026 litigation conduct that Plaintiff should be compensated for under § 285. Accordingly, combining both fee awards, the total overall fee awarded to Plaintiff is $68,700.

## IV. CONCLUSION

For these reasons, the Court will grant Plaintiff's motions to supplement and for attorney fees. The Court will order Defendant to pay Plaintiff a total award of $68,700, which is comprised of $33,510 for fees incurred on and before March 27, 2026, and $35,190 for fees incurred after that date. Accordingly, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Motion for Leave to Supplement Motion for Attorney Fees under 35 U.S.C. § 285 (DN 173), [**R. 189**], is **GRANTED**.
2. Plaintiff's Motion for Attorney Fees Under 35 U.S.C. § 285, [**R. 173**], is **GRANTED in part**. Plaintiff is awarded the sum of $68,700 in attorney fees.

---

[5] As Plaintiff counsel represents, *see* [R. 189-5, p. 39], these calculations do not include attorney fees that have already been awarded to Plaintiff.

3. This action is **STRICKEN** from the Court's active docket.

4. A separate Judgment shall be entered contemporaneously herewith.

This the 28th day of September, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY